724 F.Supp. 333 (1989)
HOTEL EMPLOYEES RESTAURANT EMPLOYEES INTERNATIONAL UNION LOCAL 54, Plaintiffs,
v.
ELSINORE SHORE ASSOCIATES d/b/a Atlantis Hotel and Casino, Elsinore Corporation, Elsub Corporation, Elsinore Atlantic City, and Elsinore of New Jersey, Inc., Defendants.
Civ. A. No. 89-2143.
United States District Court, D. New Jersey.
November 14, 1989.
Meranze and Katz by Michael N. Katz, Cherry Hill, N.J., for plaintiffs.
*334 Saiber, Schlesinger, Satz & Goldstein by David M. Satz, Newark, N.J., for defendants.
COHEN, Senior District Judge:
This Worker Adjustment and Retraining Notification Act ("WARN") case comes before this court on a motion to dismiss by defendants, Elsinore Shore Associates d/b/a Atlantis Hotel and Casino, Elsinore Corporation, Elsub Corporation, Elsinore Atlantic City and Elsinore of New Jersey (Elsinore) against plaintiff, Hotel Employees Restaurant Employees International Union Local 54. Defendants contend that plaintiff has not stated a claim upon which relief can be granted, and therefore the court should dismiss its complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff, however, has stated a valid claim. Therefore defendants' motion to dismiss shall be denied.

FACTS
Defendants owned and operated the Atlantis, a hotel and casino. In 1985 defendants filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. In 1988 a plan of reorganization was approved by the Bankruptcy Court and thereafter defendants continued to operate the Atlantis. The Atlantis, however, continued having financial problems. In early 1989 defendants commenced negotiations for the sale of the Atlantis to DJT Inc. Plaintiff contends that defendants knew that the sale would result in the termination of all casino operations. During the course of these negotiations, proceedings were conducted by the New Jersey Casino Control Commission ("Commission") on whether the Commission should renew defendants' casino license. Due to Atlantis' unfavorable financial situation, on April 7, 1989 the Commission denied defendants' application for a license.
On April 13, 1989 the Commission decided to appoint a Conservator. This allowed defendants to continue their operation without a license until a sale could be completed or Atlantis' cash reserves became insufficient to satisfy regulatory standards. The Conservator began his appointment on April 14, 1989. Immediately prior to this, defendants entered into a sales agreement with DJT Inc.[1]
Since defendants' financial situation continued deteriorating, the Division of Gaming Enforcement of the New Jersey Attorney General's Office filed a petition with the Commission to determine whether Atlantis could continue to operate on a sound financial basis. After a hearing on this issue, the Commission concluded that Atlantis could not continue to operate. It notified defendants on May 16, 1989 that all gaming operations had to cease at Atlantis on May 22, 1989. Defendants notified their employees on or about May 17, 1989 that they were laid off as of May 22, 1989. Subsequently plaintiff filed a claim under the "WARN" act contending that defendants violated their duty to notify affected employees sixty days prior to the lay off.[2]

DISCUSSION
It is well established that all factual allegations set forth in the complaint and reasonable inferences drawn therefrom must be accepted as true and viewed in the light most favorable to plaintiff, for purposes of a motion to dismiss. Further, a complaint should be dismissed "only if it appears to a certainty that no relief could be granted under any set of facts which could be proved." D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir.1984); See also Sturm v. Clark, 835 F.2d 1009 (3d Cir.1987).
Under "WARN" relief may be granted if an employer, with one hundred or more full time employees, permanently shuts down *335 an operating unit within a single site of employment, without notifying the affected employees sixty days in advance.[3] 29 U.S.C. § 2101(a) (Supp.1989). An affected employee is one who "may reasonably be expected to experience an employment loss as a consequence of" a permanent shut down of an operating unit. Id. "WARN" refers to a permanent shut down as a plant closing. Id.
Defendants do not dispute that prior to April 14, 1989 they were employers for the purposes of the "WARN" act, and that plaintiff represents affected employees. Defendants contend, however, that they were discharged of all responsibility under the "WARN" act when the New Jersey Casino Control Commission appointed a Conservator pursuant to N.J.S.A. 5:12-130.1 (1988). Defendants claim that the Conservator became the employer for purposes of the act.
If instead of the Conservator's appointment, there had been a sale, "the seller [would have been] responsible for providing notice of any plant closings ... which [took] place up to and including the sale ... [T]he buyer [would have been] responsible for providing notice of any plant closing ... that [took] place thereafter." 20 C.F.R. § 639.4(c) (1989). In other words, whoever is the employer at the time of the plant closing is responsible for notifying the employees sixty days in advance.
If as defendant contends, the Conservator filled the role of the employer, then the Conservator would have succeeded to the obligations of the "WARN" act. The Department of Labor considers that a trustee appointed by a Bankruptcy Court who "may continue to operate the business for the benefit of creditors,"[4] succeeds to "WARN" act obligations. A trustee appointed by the Bankruptcy Court, however, only succeeds to these obligations when she "continues the business in operation." 54 Fed.Reg. 16045 (1989). This is the test to apply. If the Conservator continued the business in operation, then he filled the role of the employer for purposes of "WARN". Plaintiff contends that the Conservator did not continue the business in operation. Rather that defendants continued the business in operation and the Conservator simply monitored and assessed the business in consultation with the Commission.[5] We agree.
Defendants claim that the Commission's order appointing the Conservator clearly places the Conservator in the position of an employer. The order, however, states that "the operations of the casino hotel shall be conducted by [defendants] under the general guidance and oversight, but without specific review or approval, of the Conservator." State of New Jersey Casino Control Commission Order No. 89-108.[6] The Commission ordered the Conservator to "assess and monitor" defendants' financial situation, not to take over day to day operations. Id.
Although the Conservator was authorized to sell the Atlantis, he could only do so after "prior consultation with [defendants] as to the reasonableness of [the] terms and conditions" of the sale. Id. In addition defendants were authorized to continue "negotiating with potential purchasers," while the conservator would participate in these negotiations "to the extent of *336 asking questions and expressing his views." Id. The Conservator could "take no unusual or disruptive action" without first consulting the Commission, and the defendants could take no significant action without consulting the Conservator. Id.
It appears that the Commission implemented a system of checks and balances, pending the sale of the Atlantis, in order to assure that defendants met minimum regulatory standards, without unduly disrupting day to day operations. The checks and balances served to curb any major action on the part of the defendants and the conservator, but the daily operation was handled by defendants. This is illustrated by the fact that defendants, and not the Conservator, laid off the employees pursuant to the Commission's order to cease all gaming operations.
While N.J.S.A. 5:12-130.2 (1988) gives the Conservator broad powers, the Commission did not appoint the Conservator with the intent that he should exercise all those powers. Nor did the Conservator actually exercise many of his statutory powers. In fact, the Commission even notes in its order the Conservator's "relatively limited role". State of New Jersey Casino Control Commission Order No. 89-108. Since the Conservator never exercised his statutory powers, he never filled the role of the employer. Rather the Conservator let his statutory power remain dormant and fulfilled a regulatory function. Therefore he did not succeed to defendants "WARN" act obligations.
Defendants claim that the Conservator is an indispensable party pursuant to Fed.R. Civ.P. 19(b). The Conservator did not succeed to the "WARN" act obligations. We therefore find that he is not an indispensable party.
For the aforementioned reasons defendant's motion to dismiss shall be denied.
NOTES
[1] This agreement was ultimately approved by the Commission and the United States Bankruptcy Court for the District of New Jersey in July of 1989.
[2] Originally plaintiff filed a complaint against defendants, the Conservator, and the Commission. Plaintiff, however, voluntarily dismissed its claim against the Conservator and the Commission.
[3] "WARN" grants relief under other circumstances as well.
[4] The Department of Labor stated: "[W]here the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the [`WARN' act] obligations of the employer precisely because the fiduciary continues the business in operation." 54 Fed.Reg. 16045 (1989).
[5] Initially plaintiff alleged that both the Conservator and the defendants controlled the operation of Atlantis. The plaintiff has stated its intention to amend its complaint to alleging that only defendants controlled the business operations.
[6] Plaintiff claims that the Conservator's position is analogous to that of a Conservator appointed by the Federal Home Loan Bank Board. When a Federal Savings and Loan Association becomes insolvent, the Federal Home Loan Bank Board appoints a Conservator for purposes of preserving the assets and to reorganize the bank structure. The Department of Labor makes it clear that the Federal Home Loan Bank Board is not an employer for purposes of the "WARN" act. 54 Fed.Reg. 16045 (1989).