Daniel L. **FINKLER**; Doreen Vitalo; Frank Franceschini; John M. LeGrand; Kenneth Arthur; Christine Bednarsky; Jean Bruno; Paulette Chapman; Denise Lynne Crowe; Jerry Fisher; Al Glenn; Linda Pasquale Krause; Cheryl McCarty; Joseph Manno; Leon A. Sarao; Barry R. Shapiro; Tom Tavener; Babette Weinstein; Sallie Williamson; Lane F. Yoshida; David Owens; Edward Malesinski; Rose Brennan; Grace Jasper; Arturo Barrera; Lorrie Lennox; Ronald J. Sohl, Sr., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**ELSINORE SHORE ASSOCIATES** d/b/a Atlantis Casino Hotel; Elsub Corporation; Elsinore of Atlantic City; and Elsinore of New Jersey Inc.; Elsinore Corporation, Defendants.

Civ. A. No. 89–2330.

United States District Court, D. New Jersey.

Nov. 22, 1989.

Tomar, Simonoff, Adourian & O'Brien, P.C. by Theodore V. Lieverman, Haddonfield, N.J., for plaintiffs.

Saiber, Schlesinger, Satz & Goldstein by David M. Satz, Jr., Newark, N.J., for defendants.

COHEN, Senior District Judge:

This Worker Adjustment and Retraining Notification Act ("WARN") action instituted by captioned plaintiffs against the captioned defendants, is presently before the court on a motion by the defendants to dismiss the plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendants contend that plaintiffs have not stated claims upon which relief can be granted. Plaintiffs, however, have stated at least two valid claims, contending defendants violated the "WARN" Act, and breached their contract for retroactive pay benefits. We hold that these are claims upon which relief can be granted. Relief cannot be granted on plaintiffs' claim under the New Jersey Wage Payment Law. Therefore defendants' motion to dismiss shall be denied in part and granted in part.

## FACTS

Defendants owned and operated the Atlantis, a hotel and casino, located in Atlantic City, New Jersey. In 1985 defendants filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. While under the protection of the Bankruptcy Court, defendants informed their employees that wage increases were not financial-

ly feasible. In 1988 a plan of reorganization was approved by the Bankruptcy Court and thereafter defendants continued to operate the Atlantis. In November of 1988 defendants announced that in consideration for the employees' hard work and loyalty, defendants were prepared to pay them retroactive pay benefits. A month later defendants entered into contracts with their employees regarding these retroactive pay benefits.

The Atlantis, however, continued having financial problems. In early 1989 defendants commenced negotiations for the sale of the Atlantis to DJT Inc. (Donald J. Trump Inc.). Plaintiffs contend that defendants knew that the sale would result in the termination of all casino operations. During the course of these negotiations, proceedings were conducted by the New Jersey Casino Control Commission ("Commission") on whether the it should renew defendants' casino license. Due to Atlantis' unfavorable financial situation, on April 7, 1989 the Commission denied defendants' application for a license.

On April 13, 1989 the Commission decided to appoint a Conservator. This allowed defendants to continue their operation without a license until a sale could be completed or Atlantis' cash reserves became insufficient to satisfy regulatory standards. The Conservator commenced his appointment on April 14, 1989. Immediately prior to this, defendants entered into a sales agreement with DJT Inc.[1]

Since defendants' financial situation continued to deteriorate, the Division of Gaming Enforcement of the New Jersey Attorney General's Office filed a petition with the Commission to determine whether Atlantis could continue to operate on a sound financial basis. After a hearing on this issue, the Commission concluded that Atlantis could not do so. It notified defendants on May 16, 1989 that all gaming operations had to cease at Atlantis on May 22, 1989. Defendants notified their employees on or about May 17, 1989 that they were "laid off" [2] as of May 22, 1989. Subsequently plaintiffs filed a claim under the "WARN" Act contending that defendants violated their duty to notify affected employees sixty days prior to the "lay off", and a claim that defendants never completed payment of plaintiffs' retroactive pay benefits, in violation of the New Jersey Wage Payment Law 34 N.J.S.A. 11–4.2 and in breach of contract.

DISCUSSION

It is well established that all factual allegations set forth in the complaint and reasonable inferences drawn therefrom must be accepted as true and viewed in the light most favorable to plaintiffs, for purposes of a motion to dismiss. Further, a complaint should be dismissed "only if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984); *See also Sturm v. Clark,* 835 F.2d 1009 (3d Cir. 1987).

Under "WARN" relief may be granted if an employer, with one hundred or more full time employees, permanently shuts down an operating unit within a single site of employment, without notifying the affected employees sixty days in advance.[3] 29 U.S.C. § 2101(a) (Supp.1989); 29 U.S.C. § 2102(a) (Supp.1989). An affected employee is one who "may reasonably be expected to experience an employment loss as a consequence of" a permanent "shut down" of an operating unit. 29 U.S.C. § 2101(a) (Supp.1989). "WARN" refers to a permanent "shut down" as a plant closing. *Id.*

Defendants do not dispute that prior to April 14, 1989 they were employers for

1. This agreement was ultimately approved by the Commission and the United States Bankruptcy Court for the District of New Jersey in July of 1989.

2. The terms "layoff", "mass layoff", "plant closing" and "shut down" are those used and defined in the "WARN" Act. *See* 29 U.S.C. § 2101 (Supp.1989); 29 U.S.C. § 2102 (Supp.1989).

3. "WARN" grants relief under other circumstances as well.

purposes of the "WARN" Act. They contend, however, that plaintiffs are not affected employees, or in the alternative that they were discharged of all responsibility under the "WARN" Act when the New Jersey Casino Control Commission appointed a Conservator pursuant to 5 N.J.S.A. § 12–130.1 (1988). Defendants thereupon maintain that the Conservator became the employer for purposes of the Act.

*Plaintiffs Are Affected Employees*

Plaintiffs allege that defendants ordered a "mass layoff" without notifying employees. The "WARN" act only provides a remedy in the case of a "mass layoff" when it is more than six months in duration. 29 U.S.C. § 2101(a) (Supp.1989). Defendants claim that no case or controversy exists because plaintiffs filed this action only four days after the commencement of the "mass layoff".

Firstly, although both parties characterized defendants' action as a "mass layoff", these actions actually resulted in a plant closing. Defendants responded to the Commission's Order requiring them to cease all gaming operations. When they ceased these operations, they had no expectations of resuming them and rehiring plaintiffs. Defendants terminated plaintiffs' employment permanently.

Secondly, even if we assume that defendants ordered a "mass layoff", plaintiffs need not wait six months in the case of a "mass layoff" to institute an action. As long as a "mass layoff" is reasonably expected to last more than six months and the employees "may reasonably be expected to experience an employment loss as a consequence", employees may institute an action under "WARN". 29 U.S.C. § 2101(a) (Supp.1989).

Even assuming that the defendants ordered a "mass layoff" instead of a plant closing, plaintiffs reasonably concluded that it would exceed six months. If the "mass layoff" is not going to exceed six months, defendants could very easily inform their employees of that fact. The defendants have not asserted at any time that the "shut down" is temporary. We therefore conclude that plaintiffs are affected employees and have stated a valid cause of action under the "WARN" Act.

*The Conservator's Appointment Did Not Relieve Defendants Of Their Obligations Under The "WARN" Act*

If instead of the Conservator's appointment, there had been a sale, "the seller [would have been] responsible for providing notice of any plant closings ... which [took] place up to and including the sale ... [T]he buyer [would have been] responsible for providing notice of any plant closing ... that [took] place thereafter." 20 C.F.R. § 639.4(c) (1989). In other words, whoever is the employer at the time of the plant closing is responsible for notifying the employees sixty days in advance.

If, as defendants contend, the Conservator filled the role of the employer, then the Conservator would have succeeded to the obligations of the "WARN" Act. The Department of Labor considers that a trustee appointed by a Bankruptcy Court who "may continue to operate the business for the benefit of creditors,"[4] succeeds to "WARN" Act obligations. A trustee appointed by the Bankruptcy Court, however, only succeeds to these obligations when he/she "continues the business in operation." 54 Fed.Reg. 16045 (1989). This is the test to apply. If the Conservator continued the business in operation, then he filled the role of the employer for purposes of "WARN". Plaintiffs contend that the Conservator did not do so. Rather, they maintain that defendants continued the business in operation and the Conservator simply monitored and assessed the business in consultation with the Commission.

Defendants claim that the Commission's Order appointing the Conservator clearly

4. The Department of Labor stated: "[W]here the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the ["WARN" Act] obligations of the employer precisely because the fiduciary continues the business in operation." 54 Fed.Reg. 16045 (1989).

places the Conservator in the position of an employer. The Order, however, states that "the operations of the casino hotel shall be conducted by [defendants] under the general guidance and oversight, *but without specific review or approval,* of the Conservator." State of New Jersey Casino Control Commission Order No. 89–108. The Commission ordered the Conservator to "assess and monitor" defendants' financial situation, not to take over day to day operations. *Id.*

Although the Conservator was authorized to sell the Atlantis, he could only do so after "prior consultation with [defendants] as to the reasonableness of [the] terms and conditions" of the sale. *Id.* In addition defendants were authorized to continue "negotiating with potential purchasers," while the conservator would participate in these negotiations "to the extent of asking questions and expressing his views." *Id.* The Conservator could "take no unusual or disruptive action" without first consulting the Commission, and the defendants could take no significant action without consulting the Conservator. *Id.*

It appears that the Commission implemented a system of checks and balances, pending the sale of the Atlantis, in order to assure that defendants met minimum regulatory standards, without unduly disrupting day to day operations. The checks and balances served to curb any major action on the part of the defendants and the Conservator, but the daily operation was handled by defendants. This is illustrated by the fact that defendants, and not the Conservator, "laid off" the employees pursuant to the Commission's order to cease all gaming operations.

While 5 N.J.S.A. 12–130.2 (1988) gives the Conservator broad powers, the Commission did not appoint the Conservator with the intent that he should exercise all those powers. Nor did the Conservator actually exercise many of his statutory powers. In fact, the Commission even notes in its Order the Conservator's "relatively limited role". State of New Jersey Casino Control Commission Order No. 89–108. Since the Conservator never exercised his statutory powers, he never filled the role of the employer. Rather, the Conservator let his statutory power remain dormant and fulfilled a regulatory function. Therefore he did not succeed to defendants "WARN" act obligations.

Defendants maintain that the Conservator is an indispensable party pursuant to Fed.R.Civ.P. 19(b). Since Conservator did not succeed to defendants' "WARN" Act obligations, we find that he is not an indispensable party.

### *The New Jersey Wage Payment Law Does Not Apply To Retroactive Pay Benefits*

■ As to plaintiffs' claim that defendants violated the New Jersey Wage Payment Law, we hold that this law does not apply to retroactive pay benefits. The New Jersey Wage Payment Law provides that "every employer shall pay the full amount of wages due to his employees." 34 N.J.S.A. § 11–4.2 (1988). Wages are defined as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." 34 N.J.S.A. § 11–4.1 (1988). Although defendants' retroactive pay benefits may have been calculated on a "time, task, piece or commission basis," they are not wages for purposes of the statute. The statute provides that wages be paid at least "twice during each calender month" and that "the end of the pay period for which payment is made on regular payday shall not be more than ten working days before such regular payday." This clearly indicates that "wages" are payments promised in advance of the services performed and paid promptly, or at least intended to be paid promptly, after services are rendered. Retroactive payments do not fit into this statutory scheme and are not addressed by this statute. Therefore defendants' motion to dismiss on this issue shall be granted.

For the aforementioned reasons defendants' motion to dismiss shall be denied in part and granted in part.