**LOCAL 217, HOTEL & RESTAURANT EMPLOYEES UNION, Joseph Jean, Frederick Grilli, on Behalf of Himself and Others Similarly Situated, Harry Parlee, on Behalf of Himself and Others Similarly Situated, Plaintiffs–Appellants,**

v.

**MHM, INC., Defendant–Appellee/Third–Party–Plaintiff,**

**Colonial Constitution East Limited Partnership, Colonial Realty/USA Corporation, Constitution Management Corp., Third–Party–Defendants.**

No. 888, Docket 91–7943.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1992.

Decided Sept. 24, 1992.

Daniel E. Livingston (Ruth L. Fulda, Gould, Livingston, Adler & Fulda, Hartford, Conn., of counsel), for plaintiffs-appellants.

Emanuel N. Psarakis (Duncan Ross MacKay, Robinson & Cole, Hartford, Conn., of counsel), for defendant-appellee.

Before:. WINTER and MAHONEY, Circuit Judges, and KORMAN,* District Judge.

WINTER, Circuit Judge:

This is an appeal from Judge Cabranes's adoption of Magistrate Judge Margolis's report recommending denial of a motion for a preliminary injunction. 805 F.Supp. 93. Appellants are Local 217 of the Hotel & Restaurant Employees Union and certain of its members who are former employees of the Summit Hotel in Hartford, Connecticut. The Summit closed in August 1990. At that time, the Summit was owned by Colonial Constitution East Limited Partnership ("CCELP"), a limited partnership whose general partner was the now-defunct Colonial Realty Company. The hotel was operated and its employees worked under a collective bargaining agreement with MHM, Inc., a hotel management firm. Appellants sought a preliminary injunction directing MHM to provide medical care to the laid-off employees. The motion was based on two federal statutes. The first, the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101, *et seq.* (1988) ("WARN"), requires employers either to give sixty days notice of site closings or to compensate laid-off employees for sixty days salary and benefits. The second statute, part of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 *et seq.* (1988) ("COBRA"), requires group health care plan sponsors to

---

* The Hon. Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

provide continuation coverage for employees who are terminated from their employment under certain specified circumstances, including layoffs.

Because damages are the exclusive relief provided by WARN, appellants are not entitled to a preliminary injunction under that statute. Appellants have failed to show a likelihood of success on their COBRA claim. We therefore affirm the denial of injunctive relief.

## BACKGROUND

MHM managed the hotel during the period of CCELP's ownership. MHM was a party to a collective bargaining agreement with Local 217, which represented the hotel's employees, and was responsible for the hiring and firing of employees. MHM paid the employees with checks in its name.

On July 30, 1990, representatives of CCELP and MHM met to discuss the possibility of the hotel closing. They reached a tentative decision, finalized a few days later, to close in early August. On August 7, Robert Lobo, general manager of the hotel and an MHM employee, notified the hotel's employees that it would be closing in three days, as it did.

At the time of the closing, the collective bargaining agreement in force between Local 217 and MHM provided for a medical benefits plan. MHM had earlier elected to provide these benefits on a self-insured basis with Blue Cross/Blue Shield ("BC/BS") administering the plan through an Administrative Services Only ("ASO") agreement. On August 13, 1990, MHM notified BC/BS of the closing and stated that CCELP would continue to fund the existing insurance arrangement for a period of five months. BC/BS continued to administer the employees' medical coverage into September. However, on September 4 and September 7, CCELP's checks bounced. On September 18, BC/BS notified CCELP that it was terminating the ASO agreement because of insufficient funds for claims in the post-closing period. In fact, BC/BS is now owed over $100,000.

Former employees of the Summit discovered the cancellation of their medical insurance when their requests for reimbursement were denied. Appellants commenced this action against MHM on December 18, 1990. They sought declaratory and injunctive relief and damages against MHM based, *inter alia*, on the WARN and COBRA claims that are the subject of the instant appeal. The next day, they moved for a preliminary injunction enjoining MHM from: (1) refusing to provide fifty-seven days of health insurance due under WARN; and (2) refusing to provide the opportunity to purchase continuation medical coverage as required by COBRA.

The motion for a preliminary injunction was referred to Magistrate Judge Margolis. Her report, adopted by Judge Cabranes as his opinion, recommended that the district court deny the motion for preliminary injunction. The Magistrate Judge stated that appellants had not established that they were likely to succeed on the merits. Addressing Local 217's WARN claim, she found that MHM was not the employer of the laid-off employees for purposes of WARN. As to the COBRA claim, the Magistrate Judge stated that MHM was both the "employer" and the "plan sponsor" within the terms of COBRA but that she lacked the power to order MHM to enter into an insurance agreement with an insurer that was not a party to the litigation. She reasoned that no insurer would be likely to enter into such an agreement. This appeal followed.

## DISCUSSION

### 1. *The WARN Claim*

Section 2102(a) of WARN requires employers to give employees sixty days written notice prior to an employment site closing or a mass layoff. 29 U.S.C. § 2102(a). WARN defines "employer" as "any business enterprise that employs ... more than 100 employees." 29 U.S.C. § 2101(a)(1)(A). WARN further provides that

[a]ny employer who orders a [site] closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing

or layoff for (A) back pay ... and (B) benefits ... including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred. 29 U.S.C. § 2104(a)(1). A civil action for damages under this Section is "the exclusive remed[y] for any violation of this chapter." 29 U.S.C. § 2104(b).

■ The Magistrate Judge treated the issue of MHM's status as an employer under WARN as a question of "Who ran the show?" Relying on the then-available decisions interpreting WARN, *Hotel Employees Restaurant Employees Int'l Union Local 54 v. Elsinore Shore Associates*, 724 F.Supp. 333 (D.N.J.1989) and *Finkler v. Elsinore Shore Associates*, 725 F.Supp. 828 (D.N.J.1989), she stated that because CCELP exercised ultimate authority for the closing of the hotel, it, rather than MHM, was the employer for purposes of WARN. The *Elsinore Shore* cases, however, are not dispositive of the instant matter. They involved a claim that, because a state-appointed conservator had been appointed to supervise the operations of a hotel, the conservator and not the hotel was the WARN employer. In those cases, the court held only that, because the conservator had only a limited role and the defendants "continued the business in operation," the hotel was the WARN employer. *Hotel Employees*, 724 F.Supp. at 335; *Finkler*, 725 F.Supp. at 831–32.

It is true that in the instant matter CCELP made the decision to close the hotel. It by no means follows, however, that MHM was not a WARN employer. Section 2101(a)(1)(A) defines employer as "[a]ny business enterprise ... employ[ing] more than 100 employees." Giving the statutory language its common meaning, MHM was undeniably the "employer" of the laid-off employees. It bargained with, hired, fired, supervised, paid, and ultimately laid off the employees. The collective bargaining agreement governing labor-management relations at the Summit Hotel was between MHM as the employer and Local 217 as the representative of the employees. The only

question, therefore, is whether there is some compelling reason to ignore the plain import of the statutory language.

MHM argues that it was powerless to comply with WARN's notice provisions because it could not control either the timing or the substance of CCELP's decisions regarding the continuation of the hotel's operations. That is hardly a compelling argument, however. Even if WARN contained an "Act of God" or "force majeure" exemption, the circumstances here would not trigger it. MHM entered into a contractual arrangement with CCELP to manage the hotel. CCELP was thus a customer of services provided by MHM. Nothing prevented MHM from charging a management fee that took potential liability under WARN into account. For all that appears on this record, MHM may have done so. Nor did anything prevent MHM from bargaining for specific contractual terms that would give it notice of closure sufficient to meet its obligations under WARN or from bargaining for a monetary arrangement, such as an escrow account, that would guarantee payment of the damages specified in Section 2104(a)(1)(A) and (B). MHM therefore voluntarily exposed itself to the obligations imposed by WARN. To hold otherwise would not only flaunt the statutory language but would also invite resort to arrangements separating real estate and operational aspects of businesses solely to evade WARN. In analogous circumstances, we would not seriously entertain an argument that an employer need not comply with safety laws or regulations governing physical plants because the plant was leased and the landlord refused to allow modifications or repairs.

■ Although we conclude that MHM was a WARN employer, Local 217 is not entitled to the relief it seeks. As noted, WARN § 2104(a) provides a damages action for back pay and for "the cost of medical expenses incurred during the employment loss." Section 2104(b) states, however, that "the remedies provided for in this section shall be the exclusive remedies for any violation of this chapter." The relief appellants seek, a preliminary injunc-

tion compelling MHM to provide fifty-seven days of insurance coverage under WARN, is, therefore, not one of the remedies specified in WARN and was properly denied.

## 2. *The COBRA Claim*

Appellants also sought an injunction under the COBRA provisions of ERISA directing MHM to offer the employees a sixty-day period during which they may obtain continuation medical coverage. COBRA requires that a group health plan provide for continuation coverage of medical benefits for, *inter alia*, laid-off employees. 29 U.S.C. § 1161(a). The purpose of COBRA is to afford employees who lose their job in a partial layoff continuation medical coverage at approximately the group rate, which is of course lower than the rate for individual coverage. *See* Consolidated Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–272, 100 Stat. 82, 227 (describing COBRA as a "temporary extension of coverage at group rates").

The "plan sponsor of each group health plan" must thus provide an opportunity to qualified beneficiaries who are covered under a group insurance plan and who will lose coverage as a result of a "qualifying event," 29 U.S.C. § 1161(a)—*e.g.*, "the termination . . . of the covered employee's employment," 29 U.S.C. § 1163(2)—to elect "continuation coverage under the plan." 29 U.S.C. § 1161(a). "Continuation coverage" is "coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan." 29 U.S.C. § 1162(1). Under Section 1162(3)(A) the coverage must be made available at no more than 102% of the group rate.

Upon the happening of a qualifying event, such as layoffs, an employer must notify the plan administrator of the occurrence of that event. 29 U.S.C. § 1166. The administrator must then notify the qualified beneficiaries of their rights under COBRA within fourteen days of the date on which the administrator is notified. *Id.* The qualified beneficiary may elect continuation coverage within sixty days of the qualifying event or of notice of the qualifying event, whichever is later. 29 U.S.C.

§ 1165(1). Premiums are to be paid by the employee. 29 U.S.C. § 1162(3). The continuation coverage is for a maximum period of eighteen months but ends upon the employer's ceasing to provide any group health plan. 29 U.S.C. § 1162(2)(B) and (C). *See generally, Communications Workers of America v. NYNEX Corp.*, 898 F.2d 887 (2d Cir.1990) (discussing COBRA).

■ The Magistrate Judge stated that MHM was both the "plan sponsor" and "employer" for purposes of COBRA. She also stated that when MHM notified BC/BS, the plan administrator, of the layoffs pursuant to Section 1166(a)(2), MHM had complied with its obligations under CO-BRA. Local 217 argues, however, that no opportunity to elect continuation coverage was available in the instant matter for the sixty days as mandated by Section 1165(1) and that it is now entitled to an injunction requiring MHM to provide a sixty-day period during which the employees may obtain continuation coverage. We disagree.

COBRA provides that, if an employer maintains a group health plan, the plan must provide continuation coverage for employees who would lose coverage because of a qualifying event. The employer or sponsor's only further obligation under CO-BRA is to notify the administrator of the qualifying event, after which the administrator must give notice under COBRA to the particular beneficiaries of their right to continuation coverage. 29 U.S.C. § 1166. Of course, the plan administrator is contractually obligated to provide that coverage to the employees who select it and who pay the premium.

■ However, an employer is under no obligation flowing from COBRA to adopt a group health plan or to maintain one that is in existence. Indeed, the collective bargaining agreement in the instant matter provided that group health benefits would cease within 90 days of the closing of the hotel, and COBRA provides that continuation coverage ceases upon, *inter alia*, "[t]he date on which the employer ceases to provide any group health plan to any employee." 29 U.S.C. § 1162(2)(B) (hereafter "Subsection B"). Once an employer ceases

to maintain any group health plan, therefore, COBRA releases the plan administrator from the obligation to provide continuation coverage at the group rate, no doubt because the economies of group coverage no longer exist.

Local 217's request for a preliminary injunction requiring MHM to provide a sixty-day window to elect continuation coverage is based on a misreading of COBRA. The request seems to assume that once continuation coverage is selected during the sixty-day period, the beneficiary is thereafter entitled to medical coverage for eighteen months, whether or not the plan ceases. If so, the assumption is mistaken because a cessation of the plan terminates continuation coverage under Subsection B.

Turning to the facts in the instant matter, MHM provided a group health plan and notified BC/BS that a qualifying event had occurred. BC/BS did not thereafter give notice to the employees pursuant to Section 1166. Whether it was required to do so is in some doubt because the layoffs were not partial and were thus the harbinger of the termination of the plan and of continuation coverage. In any event, BC/BS is not a party to this action, and the issue is not before us.

■ Neither CCELP nor MHM paid the required premiums for any of the beneficiaries after August 1990. If the plan ceased at that time under Subsection (B), appellants thereafter had no right under CO-BRA to continuation coverage. This result flows from the fact that COBRA does not compel employers to offer a group health care plan. It requires only that, where a plan is in effect, the plan must include the specified right to continuation coverage. Where a plan is terminated, there is no COBRA obligation on the employer or the administrator to provide continuation coverage. If Subsection (B) applies, therefore,

appellants' rights to continuation coverage under COBRA were eliminated when the CCELP checks bounced. We believe Subsection (B) does apply.

Because a total failure to pay premiums will inevitably lead to a plan's immediate termination, such a failure seems to qualify easily as a cessation within the language of Subsection (B). The only matter that might give us pause is that Subsection (B) appears to require employers with multiple health plans either to cease all group health plans to all employees or to provide continuation coverage to all laid-off employees. Subsection (B) thus states that continuation coverage ceases when an employer "ceases to provide *any* group health plan to *any* employee." (emphasis added). The language and the legislative history suggest that "[i]f the employer maintains more than one plan, continuation must be provided so long as any plan is offered by the employer." S.R. 99–146, 99th Cong., *reprinted in* 1986 U.S.C.C.A.N. 42, 324. Nevertheless, Local 217 does not claim that MHM is a sponsor of another group health plan, and thus we must treat the failure to pay the premiums as a Subsection (B) cessation terminating any right to continuation coverage.[1]

## CONCLUSION

Appellants are not, therefore, entitled to injunctive relief. At best, they showed that, under WARN, medical coverage should have been provided for the sixty days after the closing of the hotel. WARN provides only a damages remedy for a breach of that obligation. After the expiration of the sixty-day period, there was no COBRA right to continuation coverage, and an injunction now would not be an appropriate remedy. We note that this discussion relates solely to appellants' rights under COBRA and WARN. What rights they

---

1. Arguably, appellants' right to continuation coverage was also eliminated under Section 1162(2)(C). It provides that continuation coverage, and *a fortiori* the right to elect such coverage, ceases when "any premium ... with respect to the qualified beneficiary" is not paid. However, the words "any premium" and "the qualified beneficiary" seem applicable only to the failure to pay some individual premiums, whether by the employer or by the beneficiary, and not to the non-payment of all premiums required by a plan, as in the instant matter. This is not only consistent with the statutory language but also avoids rendering Subsection (B) a redundancy.

may have under the collective bargaining agreement or other governing law are not before us.

We therefore affirm the denial of the motion for a preliminary injunction.

MAHONEY, Circuit Judge, concurring in the judgment:

I agree with the majority's affirmance of the denial of a preliminary injunction, and with its treatment of the COBRA issue. I disagree, however, with its analysis of the WARN issue.

The majority determines that MHM was a WARN "employer" within the meaning of § 2101(a)(1)(A) because MHM "bargained with, hired, fired, supervised, paid, and ultimately laid off the employees." The majority then concludes that liability of MHM follows under § 2104(a)(1), which provides a civil remedy for aggrieved employees against "[a]ny employer who orders a plant closing or mass layoff in violation of [the sixty-day notice requirement of] section 2102."

Both the majority opinion and the opinion of Magistrate Judge Margolis (adopted by Judge Cabranes) focus upon the identification of the statutory "employer." 29 C.F.R. § 639.3(a)(2), one of the regulations promulgated by the Secretary of Labor to implement WARN pursuant to the mandate of 29 U.S.C. § 2107(a) (1988), is relevant to such an analysis. It provides:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

It is undisputed that (as the majority puts it) "CCELP made the decision to close the hotel." This would seem to establish that under the last three of the enumerated factors, MHM should be deemed "part of the contracting company [i.e., CCELP]," rather than a "separate employer[ ]," despite the lack of common ownership, directors, and/or officers between MHM and CCELP.

In any event, in view of CCELP's ultimate authority over the closing decision and the numerous indicia of its involvement in the employer-employee relationship, including attendance of CCELP personnel at one of the bargaining sessions with the union regarding the impending closing, CCELP's express contemporaneous recognition of its liability for severance and benefit costs, and numerous prior filings of governmental tax and labor forms that identified CCELP as the "employer" of the Summit Hotel employees, it seems clear that CCELP is a § 2101(a)(1)(A) "employer." Even if MHM is also deemed a separate statutory "employer," I would conclude that in view of CCELP's undisputed responsibility for the closing decision, CCELP, and not MHM, is the "employer" that "order[ed]" the Summit Hotel closing within the meaning of § 2104(a)(1), and is therefore the only party liable under that statute.

I note, finally, Magistrate Judge Margolis' finding, amply supported by the record and not challenged on this appeal, that CCELP initially instructed MHM at the July 30, 1990 meeting to close the Summit Hotel within sixty to ninety days (thus allowing time for an appropriate WARN notice), but thereafter determined to close the hotel "immediately" and communicated this decision to MHM on August 6, 1990, resulting in an August 7 WARN notice that the hotel would be closed on August 10. This scenario would raise the issue whether, if MHM is deemed both the "employer" and the entity that "order[ed]" the hotel closing within the meaning of § 2104(a)(1), the sixty-day notice period should be reduced because "the closing ... [was] caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A) (1988); *see Finkler*

*v. Elsinore Shore Assocs.*, 781 F.Supp. 1060, 1065–66 (D.N.J.1992).