William BUTLER, Plaintiff,

v.

**TRUSTMARK INSURANCE CO., et al, Defendants.**

No. CIV.A. 4:01CV139LN.

United States District Court, S.D. Mississippi, Eastern Division.

June 28, 2002.

Leslie D. Roussell, Roussell & Swartz-fager, Laurel, MS, for plaintiff.

Roy H. Liddell, Wells, Marble & Hurst, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of defendants Trustmark Insurance Co. (Trustmark), Star Marketing Administration, Inc. (Star Marketing), and Duane McKenzie for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] Plaintiff William Butler has responded in opposition, and the court, having considered the submissions and memoranda of the parties, concludes that the motion is well taken and should be granted.

This is an action filed by Butler to recover medical insurance benefits to which he claims he is entitled. While Butler seeks recovery for these benefits under Mississippi state law, he does not contest (or at least, he offers no arguments in opposition to) defendants' assertion that the policy under which he seeks recovery constitutes an employee welfare benefit plan established pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.

The court agrees with defendants that the plan in the present case is, in fact, an ERISA-qualified plan under applicable federal law, see 29 U.S.C. § 1002; Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir.1993), and it is well established that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). Butler's state law claims are therefore properly re-characterized as claims for benefits pursuant to ERISA, and the court will consider the

---

1. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Mississippi River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir.2000); Fed. R. Civ. Pro. 56(c). "This Court will consider the evidence in the light most favorable to the non-movant.... [I]f no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin,* 230 F.3d at 174.

merits of Butler's claims under federal, rather than state, law.

Butler began working for Reid Metal Erectors (RME) in the fall of 1994. RME established an employee benefit plan (the plan) which was funded by a group health insurance policy issued by Trustmark and administered by Star Marketing. Duane McKenzie was the representative who dealt with RME on behalf of Trustmark. On December 2, 1998, Butler learned that he had cancer, and he immediately quit his job at RME. Butler was informed by RME employee Kathryn Reid in a letter dated February 4, 1999 that he had sixty days in which to extend his coverage, as provided by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). *See* 29 U.S.C. § 1161 *et seq.* Butler informed Reid that he was unable to do so, given that he had no income and was thus unable to pay the COBRA premiums.

■ On January 30, 2001, Butler filed suit against defendants in the Circuit Court of Wayne County, seeking recovery under Mississippi law for the policy benefits to which he claimed he was entitled. Defendants removed the case to federal court, asserting that federal question jurisdiction exists, inasmuch as the case involves an ERISA plan which served to completely preempt Butler's state law claims. Defendants have filed a motion for summary judgment, arguing that, in light of Butler's failure to pay the required COBRA premiums, he had no right to COBRA continuation coverage. With sympathy for the difficult position in which Butler finds himself, the court must nevertheless agree.

In 1986, Congress enacted COBRA, which, in relevant part, amended ERISA by providing for limited continuation coverage rights under employer-based group health insurance plans. If a "qualifying event" occurs, COBRA requires employers to provide former employees the opportunity to continue health care coverage under the employer's insurance plan at the former employee's expense.[2] 29 U.S.C. § 1161(a). COBRA expressly permits health plans to require the timely payment of a premium for such continuation coverage. See 29 U.S.C. § 1162(3)(providing that "[t]he plan may require payment of a premium for any period of continuation coverage, except that such premium—(A) shall not exceed 102 percent of the applicable premium for such period, and (B) may, at the election of the payor, be made in monthly installments.") COBRA also provides that continuation coverage will end on "[t]he date on which coverage ceases under the plan by reason of a failure to make timely payment of any premium." *See* 29 U.S.C. § 1162(2)(C).

The Fifth Circuit in *Fallo v. Piccadilly Cafeterias, Inc.,* 141 F.3d 580 (5th Cir. 1998), noted that the plan in that case required that premiums be paid for COBRA continuation coverage and that those seeking COBRA continuation coverage "do not receive a free ride" in that "COBRA specifically authorizes plan administrators to charge a premium for the continuation coverage." *Fallo,* 141 F.3d at 585. *See also Gann v. Fruehauf Corp.,* 52 F.3d 1320, 1329 (5th Cir.1995) (affirming the dismissal on summary judgment of an insured's claim for wrongful termination of COBRA continuation coverage, where it was established that he had missed one

---

**2.** A "qualifying event" is an event which, but for the continued coverage required by ERISA and COBRA, would result in the loss of coverage of a "qualified beneficiary." 29 U.S.C. § 1163. Termination of employment for reasons other than the employee's "gross misconduct" constitutes a "qualifying event." 29 U.S.C. § 1163(2).

month's COBRA payment.)[3]

Consistent with the terms of the statute, the plan in the present case informed Butler that

> [y]ou are required to pay the premium for continued coverage, but not more often than once a month. Premium shall be the same rate applied to the Participating Employer. Premium is due in advance and shall be paid directly to us. If you choose to continue coverage, you must make a written election and pay the first premium on or before the date coverage would otherwise end.

In this case, as in *Fallo*, defendants exercised their statutory right to require that premiums for COBRA continuation coverage be paid.

Here, though, Butler implies that his situation warrants an equitable exception to this right. He argues, that is, that he quit work since his condition rendered him unable to continue his job, and as a consequence of his unemployment, he could not afford to pay the premiums, which ought give rise to what might be termed an equitable inability to pay exception to any requirement of premium payments for continued coverage under COBRA. Even assuming for the sake of argument that Butler's condition rendered him disabled,[4] it appears to the court that COBRA's provisions specifically contemplate the potential of an insured's disability, providing that an insured who is determined, under the Social Security Act, "to have been disabled at any time during the first 60 days of continuation coverage under this

part," and who provides notice of such determination within the initial 18-month period of continuation coverage, shall be entitled to an extended period of continued coverage, i.e., 29 rather than 18 months. Nowhere does it suggest that the existence of a disability constitutes a basis for waiving the premium requirement. 29 U.S.C. § 1162(A)(v).

Butler relies heavily upon *Pitts v. American Security Life Insurance Co.*, 931 F.2d 351 (5th Cir.1991), in support of his argument that he should be excused on equitable grounds from paying COBRA premiums, and that his right to benefits "vested" as of the time of his diagnosis with cancer. The court is not persuaded.

The plaintiff in *Pitts*, while employed by an employer that provided him with medical coverage under a policy of group insurance issued by American Security Life Insurance Company, was seriously injured in an automobile accident, as a result of which he was rendered totally disabled. When the employer sought to cancel its American Security policy in favor of cheaper coverage, Pitts' father, in an effort to avoid termination of the policy, sent checks to the employer for a number of months to cover his son's premium. For these several months, the employer sent a check in the same amount to American Security, which held the checks. Eventually, however, American Security, which by then had determined that the employer did not have the required ten employees to maintain a group policy, terminated the policy. Rather than return the premiums, though,

---

**3.** The United States Supreme Court has stated that "[t]he beneficiary who makes the (COBRA) election must pay for what he gets" and "[b]enefits may cease if the qualified beneficiary fails to pay the premiums." *Geissal v. Moore Medical Corp.*, 524 U.S. 74, 80, 118 S.Ct. 1869, 1873, 141 L.Ed.2d 64 (1998). The Second Circuit has similarly concluded that "we must treat the failure to pay the premi-

ums" required by COBRA as "terminating any right to continuation coverage." *Local 217, Hotel & Restaurant Employees Union v. MHM, Inc.*, 976 F.2d 805, 810 (2nd Cir.1992).

**4.** As noted *infra*, this is a questionable assumption, but one the court will make for present purposes.

it cashed the checks. When Pitts sued to enjoin American Security from terminating his coverage, the district court first concluded that Pitts was injured before cancellation of the policy and that he had a reasonable expectation of benefits under the policy. *Id.* at 354. Further, "applying the theory of equitable estoppel, ... [it] concluded that by accepting premium payments for only one employee for five months, American Security effectively agreed to provide coverage to a group of less than ten employees." *Id.*

The Fifth Circuit agreed that Pitts should prevail on his claim because (1) he had a reasonable expectation of continued benefits; (2) the entitlement to benefits vested at the time of the injury, which was before American Security decided to cancel the policy; (3) Pitts' total disability resulting from the accident precluded him from obtaining other coverage; and (4) Pitts was innocent of any wrongdoing. *Id.* at 356. It also agreed that American Security, by accepting premiums and paying claims when it knew that the employer had fewer than ten employees, had waived its defense to liability.

In the court's opinion, plaintiff's reliance on *Pitts* is unavailing, principally because the court in *Pitts* did not consider or interpret COBRA's continuation provisions, which, as noted, specifically permit a plan to require the payment of premiums prior to obtaining continuation coverage. In fact, the court in *Pitts* plainly did not conclude that Pitts was entitled to continued coverage under American Security's policy without an accompanying requirement that he pay premiums for coverage.

The court in *Pitts* did conclude that the insured's right to coverage for expenses related to the accident that occurred during the policy period had vested, suggesting in that regard that the insured's reasonable expectations somehow supported a finding that his rights to medical benefits for that injury had vested. But notably, the opinion does not indicate whether the policy itself may have included vesting provisions, and American Security, the opinion recites, "candidly admitted" that if its policy was not declared void *ab initio* based on Pitts' employer's misrepresentation as to the number of employees in the group, "then Pitts [was] entitled to coverage for all medical expenses attributable to the injury he sustained in January 1986." *Id.* at 356.

In *Pitts*, in contrast to the case at bar, the insured, or his father, was patently willing to pay premiums for continued coverage and, indeed did so until the company terminated the policy. Unlike Butler, Pitts was not offered an opportunity to continue his coverage under COBRA, perhaps because by the time the insurer finally terminated the policy, Pitts was no longer an employee and had not been one for many months. Thus, the equitable considerations present in *Pitts* are not at work in this case. Particularly in light of the provisions of the COBRA statutes, which plainly permit plans to require the payment of premiums for continued coverage, Butler did not have a reasonable expectation that he could keep his insurance coverage notwithstanding his failure to pay for same.[5]

---

5. A conclusion that Butler acquired a vested right to benefits as a consequence of his having been diagnosed with cancer while he was employed and covered by the policy would also appear to be at odds with ERISA, which expressly exempts employee welfare benefits, such as medical insurance, from the minimum vesting requirements that ERISA imposes on pension plans. *See Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 934–35 (5th Cir.1993) (citing 29 U.S.C. §§ 1051 et seq. and §§ 1081 et seq.).

 Also without merit is Butler's contention that he was contractually entitled to "extended coverage" under the terms of the plan. Specifically, Butler seeks an additional twelve months' extended coverage under the plan provision which provides that

> [b]enefits will be extended for Covered Charges incurred before the earliest of the following:
>
> a. (i) The end of a 12–month period that began on the date coverage ends if a Participating Employer terminates coverage for his employees under this Benefit; or
>
>    (ii) The end of a 3–month period that began on the date coverage ends if an Eligible Employee loses coverage because he became disabled.
>
> b. The date the maximum amount has been paid; or
>
> c. The date Disability ends.

Butler argues that, based on this policy language, the plan required that defendants "provide continued coverage for at least a twelve-month period after his employer terminated his coverage under the plan." The court disagrees, considering that RME did not "terminate coverage" for its "employees" under the plan. Butler alone lost his coverage by quitting his job and failing to pay COBRA benefits; the twelve month extended benefits provision is therefore plainly inapplicable.[6]

In light of the foregoing, the court concludes that defendants were within their rights in requiring Butler to pay COBRA premiums and in terminating his coverage following his failure to do so. The recovery sought by Butler arises from the decision by defendants to terminate his coverage, and the court concludes that no genuine issues of material fact exist regarding Butler's right to such recovery. Butler's claims will therefore be dismissed.

In light of the foregoing, it is ordered that defendants' motion for summary judgment is granted.

---

**6.** Defendants also argue that Butler is not entitled to the three month extended benefits coverage, inasmuch as he was not disabled after he quit his job, and, in fact, received vocational rehabilitation benefits after leaving RME. While these arguments appear meritorious, the court need not address this issue, given that Butler does not seek recovery under the three month extended benefits provision. Butler argues instead that the twelve month provision is the "minimum" to which he is entitled, and he also notes that there was "no finding of disability" on his part.